UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

RONDA SHIP MANAGEMENT INC.,     :     09 Civ. _____

     Plaintiff,     :

     - against -     :

DOHA ASIAN GAMES ORGANISING     :
COMMITTEE a/k/a DAGOC,

     :

     Defendant.

------------------------------------------------------------------X

## VERIFIED COMPLAINT

The Plaintiff, RONDA SHIP MANAGEMENT INC. (hereinafter "Plaintiff"), by its

attorneys, Lennon, Murphy & Lennon, LLC as and for its Verified Complaint against the

Defendant, DOHA ASIAN GAMES ORGANISING COMMITTEE a/k/a DAGOC, (hereinafter

"Defendant") alleges, upon information and belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Federal Rule of

Civil Procedure 9(h) and 28 United States Code § 1333.

2.     At all material times, Plaintiff was and still is an entity duly organized and

existing by virtue of the laws of Liberia.

3.     Upon information and belief, at all material times, Defendant was and still is an

entity duly organized and existing by virtue of foreign law.

4.     Plaintiff chartered the motor vessels "MONA LISA," "NEW FLAMENCO" and

"OCEAN COUNTESS" (hereinafter the "Vessels") from their respective Head Owners. Thus, at

this time, Plaintiff became disponent Owner of the Vessels.

5.     Pursuant to seperate charter party contracts, Plaintiff then chartered the Vessels to Defendant for floating hotel accommodations and services of the same. *See Application Notice filed with the English High Court of Justice annexed hereto as Exhibit "A" detailing exact nature of substantive claims.*

6.     Certain disputes arose between the parties regarding Defendant's repudiation/renunciation of the charter party contracts.

7.     As a result of Defendant's breach of the charter party contracts, Plaintiff has and will continue to suffer losses as set forth in paragraph 11 below.

8.     Pursuant to the charter parties, all disputes arising thereunder were to be submitted to the London High Court of Justice in London with English law to apply.

9.     Defendant has failed to pay Plaintiff the damages resulting from its repudiation/renunciation of the charter parties.

10.     As a result, Plaintiff is in the process of bringing suit against Defendant in the High Court of Justice in London. *See Exhibit A.*

11.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London proceedings pursuant to English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts pursuant to the final judgment and award of costs:

| | | |
|---|---|---|
| A. | Principal claim: | |
| | OCEAN COUNTESS: | $3,651,200.00 |
| | MONA LISA | $3,451,200.00 |
| | NEW FLAMENCO | $4,486,200.00 |
| | -   expenses saved | ($200,000.00) |
| | | |
| B. | Estimated interest on the principal claims for three years | $2,000,000.00 |
| | | |
| C. | Attorneys fees and other recoverable costs: (approx. £ 500,000.00) | $1,000,000.00 |

Total:                                                          **$14,388,600.00**

    12.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, Patton Boggs, LLP, Mound Cotton Wollan & Greengrass, ABN-AMRO, Bank of America, Bank of India, Bank of New York, Barclays Bank, BNP Paribas, Deutsche Bank, Calyon, Credit Suisse, Citibank, HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank, UBS AG and/or Wachovia Bank N.A., which are believed to be due and owing to the Defendant. *See Affidavit of Nancy R. Siegel annexed hereto as Exhibit B.*

    13.    The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims attaching any assets of the Defendant held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

    **WHEREFORE**, Plaintiff prays:

    A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

    B.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and federal common law attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, Patton Boggs, LLP, Mound Cotton Wollan & Greengrass, ABN-AMRO, American Express Bank, Bank of America, Bank of India, Bank of New York, Barclays Bank, BNP Paribas, Deutsche Bank, Calyon, Credit Suisse, Citibank, HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank, UBS AG and/or Wachovia Bank N.A. which are due and owing to the Defendant, in the amount of $14,388,600.00 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Complaint;

     C.     That pursuant to comity and/or 9 U.S.C. §201 *et seq.*, this Court recognize and confirm any foreign judgment/award of costs on the claims had herein as a judgment of this Court;

     D.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

     E.     That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: December 17, 2009

The Plaintiff,
RONDA SHIP MANAGEMENT INC.

By: _____

Patrick F. Lennon (PL 2162)
Nancy R. Siegel (NP 2871)
LENNON, MURPHY & LENNON
The Gray Bar Bldg.,

-4-

420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 (Phone)
(212) 490-6070 (Fax)
pfl@lenmur.com
nrs@lenmur.com

## ATTORNEY VERIFICATION

1.  My name is Nancy R. Siegel

2.  I am over 18 years of age, of sound mind, capable of making this Verification and fully competent to testify to all matters stated herein.

3.  I am the attorney for the Plaintiff in this action.  I am fully authorized to make this Verification on its behalf.

4.  I have read the foregoing Verified Complaint and the contents thereof are true and accurate to the best of my knowledge, information and belief.

5.  The reason that this Verification was made by me and not the Plaintiff is that the Plaintiff is a corporation none of whose officers are present in this District.

6.  The source of my knowledge is information and records furnished to me by the Plaintiff and its counsel, all of which I believe to be true and accurate.

Dated: December 17, 2009

_____
Nancy R. Siegel

# EXHIBIT A

# Application notice

For help in completing this form please read the notes for guidance form N244Notes.

| | |
|---|---|
| Name of court | High Court Of Justice Queen's Bench Division , *Commercial Court* Royal Courts of Justice |
| Claim no. | 2008 FOLIO 1262 |
| Warrant no. (if applicable) | |
| Claimant's name (including ref.) | RONDA SHIP MANAGEMENT INC. |
| Defendant's name (including ref.) | DOHA ASIAN GAMES ORGANISING COMMITTEE |
| Date | 4 MARCH 2009 |

1. What is your name or, if you are a solicitor, the name of your firm?

McDERMOTT WILL & EMERY UK LLP

2. Are you a    [X] Claimant    [ ] Defendant    [X] Solicitor

   [ ] Other *(please specify)*

   If you are a solicitor whom do you represent?    Claimant

3. What order are you asking the court to make and why?

An order granting permission to serve the claim form and particulars of claim out of the jurisdiction pursuant to CPR 6.36, because we consider that the Claimant's claims each have a reasonable prospect of success and each fall within paragraph 3.1(6)(c) and/or (d) of Practice Direction B to CPR Part 6. We also consider that England is the most appropriate forum for the determination of the claims and that it is appropriate for the Court to exercise its general discretion to allow the Claimant to serve the claim form and particulars of claim on the Defendant in Qatar.

4. Have you attached a draft of the order you are applying for?    [X] Yes    [ ] No

5. How do you want to have this application dealt with?    [ ] at a hearing    [X] without a hearing

   [ ] at a telephone hearing

6. How long do you think the hearing will last?    [ ] Hours    [ ] Minutes

   Is this time estimate agreed by all parties?    [ ] Yes    [ ] No

7. Give details of any fixed trial date or period

8. What level of Judge does your hearing need?    Master

9. Who should be served with this application?

© Crown Copyright 2008    Laserform International 6/08

N244 Application Notice (05.08)

547128

10. What information will you be relying on, in support of your application?

[X] the attached witness statement

[ ] the statement of case

[ ] the evidence set out in the box below

If necessary, please continue on a separate sheet.

**Statement of Truth**

The applicant believes that the facts stated in this section and any continuation sheets) are true.

Signed _~~Blanch~~_      Dated <u>4 March 2009</u>

Applicant's Solicitor

Full name <u>Juliet Blanch</u>

Name of applicant's solicitor's firm <u>McDermott Will & Emery</u>

Position or office held _____
(if signing on behalf of firm or company)

11. Signature and address details

Signed _~~Blanch~~_      Dated <u>4/3/09</u>

Applicant's Solicitor

Position or office held _____
(if signing on behalf of firm or company)

Applicant's address to which documents about this application should be sent

| McDermott Will & Emery UK LLP 7 Bishopsgate London | | If applicable | |
|---|---|---|---|
| | | Phone no. | 020 7575 0345 |
| | | Fax no. | 020 7577 6950 |
| | Postcode | DX no. | DX 42619 Cheapside |
| | E C 2 N 3 A R f  f | Ref no. | JB/LK/083544.0011 |

| E-mail address | |
|---|---|

2

547128

Filed on behalf of the Claimant
Name: Juliet Blanch
First witness statement
Exhibit: JB1
Dated 4 March 2009

Claim No. 2008 FOLIO 1262

<u>IN THE HIGH COURT OF JUSTICE</u>

<u>QUEEN'S BENCH DIVISION</u>

<u>COMMERCIAL COURT</u>

BETWEEN:

RONDA SHIP MANAGEMENT INC

<u>Claimant</u>

And

DOHA ASIAN GAMES ORGANISING COMMITTEE

<u>Defendant</u>

---

FIRST WITNESS STATEMENT OF

JULIET BLANCH

---

I, JULIET BLANCH of MCDERMOTT, WILL & EMERY, 7 BISHOPSGATE, LONDON
EC2N 3AQ WILL SAY as follows:

## A.  INTRODUCTION

1.  I am a partner in the firm McDermott, Will & Emery, of the above address and have
    conduct of this matter on behalf of the Claimant ("RSM").  I make this Witness Statement

in support of RSM's application to serve proceedings on the Defendant ("DAGOC") out of the jurisdiction pursuant to CPR 6.36. I am duly authorised to make this Witness Statement on behalf of RSM.

2. McDermott, Will & Emery was instructed by RSM on 17 November 2009 and I have had conduct of this matter since that time. Prior to that, RSM was represented by Hill Dickinson International.

3. The contents of this Witness Statement are matters either within my personal knowledge and true to the best of my knowledge and belief, or, where they are not within my own personal knowledge, I can confirm that they are true to the best of my knowledge and belief. I refer in this statement to a paginated bundle of documents marked "JB 1". Page references in this Witness Statement are references to the page numbers of bundle "JB 1".

4. A copy of the Claim Form issued on 4 December 2008 which RSM is seeking permission to serve on DAGOC is exhibited at pages 1, followed by the draft Particulars of Claim at pages 2 to 8. As can be seen from those documents, RSM claims US $11,388,600 as damages following DAGOC's repudiation of three separate time charter parties dated 23 October 2006.

5. For the reasons set out below, and on the basis of the information and evidence that I have received to date, I believe that RSM's claims each have a reasonable prospect of success and each fall within paragraphs 3.1(6)(c) and/or (d) of Practice Direction B to CPR Part 6. I also believe that England is the most appropriate forum for the determination of the claims and that it is appropriate for the Court to exercise its general discretion to allow RSM to serve the Claim Form and Particulars of Claim on DAGOC in Qatar.

**B.    THE PARTIES**

6. RSM is a company incorporated in Liberia and which carried on, at all material times, business dealing in commodities and in ship management. Mr. Anastasios Pallis is the beneficial owner of RSM.

7. DAGOC is a public body with legal personality under the law of Qatar established pursuant to Emiri Decree No. 36 of 2001. DAGOC was responsible for the organisation of all aspects of the 15th Asian Games held in Doha in December 2006 ("the Asian Games").

8. DAGOC's registered address is at Suhaim Bin Hamad Street, P.O. Box 32006, Doha, Qatar.

## C.   THE US MARITIME ATTACHMENT

9. On 5 January 2007, RSM field a Verified Complaint in the United States District Court, Southern District of New York (exhibited at pages 9 to 16) pursuant to which Judge McMahon made an ex parte order for the process of maritime attachment in an amount up to and including US $18,903,194.26 (exhibited at pages 17 to 19).

10. Pursuant to this order, as at 23 August 2007, a total of US$ 9,758,609.73[1] of DAGOC's property was attached.

11. DAGOC filed an Answer and Affirmation Defences on 31 May 2007 (exhibited at pages 49 to 56), and filed its first motion to vacate the order of maritime attachment, or alternatively, to reduce the amount of that attachment, on 8 August 2007 (exhibited at pages 57 to 76).[2]

---

[1]   See the affidavit of Nancy Peterson in support of RSM's memorandum in opposition to DAGOC's motion to vacate the attachment dated 23 August 2007 (exhibited at pages 20 to 22), at paragraphs 5 to 9 and pages 7 to 8 of RSM's memorandum in opposition to DAGOC's motion to vacate the attachment (exhibited at pages 23 to 48).

[2]   Further (potentially) relevant submissions filed by the parties are DAGOC's memorandum in support of its motion (exhibited at pages 77 to 96), RSM's memorandum in opposition to the motion (exhibited at pages 23 to 48) and DAGOC's reply memorandum in support of its motion (exhibited at pages 97 to 115).

12. On 20 September 2007, Judge McMahon rejected DAGOC's motion to vacate the order of attachment, but granted its motion to reduce the amount of that attachment (exhibited at pages 116 to 127). The amount was reduced to US $13,577,488.32. It is clear from that decision that the US Court considers that the substance of the dispute will be resolved in London.[3]

13. RSM and DAGOC filed evidence and submissions in respect of this motion, to which reference below is made.

14. RSM filed a declaration from Mr. Pallis dated 17 August 2007[4] ("Mr. Pallis' Declaration", exhibited at pages 128 to 139) and a declaration from John Nicholas Pople, a partner of Hill Dickinson International dated 22 August 2007[5] ("Mr. Pople's Declaration", exhibited at pages 140 to 150).

15. DAGOC filed the following relevant evidence:

   a. A declaration from Sultan M. Al-Abdulla dated 3 May 2007 ("Mr. Al-Abdulla's Declaration", exhibited at pages 151 to 153);

   b. A declaration from Sotirios Kalamitsis dated 29 June 2007 ("Mr. Kalamitsis' Declaration", exhibited at pages 154 to 156);

   c. A declaration from Safwan Moubaydeen dated 22 July 2007 ("Mr. Moubaydeen's Declaration", exhibited at pages 157 to 171);

   d. A declaration from Mr. Abdulla K. Al-Qahtani dated 28 August 2007 ("Mr. Al-Qahtani's Declaration", exhibited at page 172);

---

[3]    At page 6 Judge McMahon states, "... To the extent that DAGOC challenges the substance of Ronda Ship's claim, its arguments go to the ultimate merits of the claims, which are more properly the subject of pending litigation in London. ..."
[4]    Due to a typing error, the date on the document is incorrect and should be 17 August 2007 rather than 17 August 2008.
[5]    Due to a typing error, the date on the document is incorrect and should be 22 August 2007 rather than 17 August 2008.

e. A declaration from Mr. Shane Freedman dated 30 August 2007 ("Mr. Freedman's Declaration", exhibited at pages 173 to 183).

## D. THE CLAIMS

16. The Claim Form and draft Particulars of Claim are exhibited at pages 1 to 8. The factual details of the claim which follow in this section are taken from the draft Particulars of Claim and the further evidence and information which have been provided to me, in particular Mr. Pallis' Declaration.

17. RSM is a company engaged in commodity trading and ship management and DAGOC was responsible for organising the Asian Games.

18. In or around February 2006, negotiations commenced for the hire of vessels by RSM to DAGOC to be used as hotels for the accommodation of guests at the Asian Games. Over the period of discussions, RSM proposed many vessels to DAGOC, who viewed several of them. Detailed discussions as to the charter party terms took place from August 2006 onwards.[6]

19. On 2 October 2006, a Conditional Letter of Intent ("CLOI") was signed by Mr. Abdullah K. Al-Qahtani (DAGOC's Director General) on behalf of DAGOC and Mr. Pallis on behalf of RSM (exhibited at pages 183a and 183b), pursuant to which DAGOC confirmed its intention to award a contract for the hire of vessels for use as hotels at the Asian Games to RSM.

20. Following the signing of the CLOI, Mr. Pallis entered into negotiations with the head owners of vessels with the intention that RSM would supply the services of those vessels

---

[6] Paragraphs 4 to 9 of Mr. Pallis' Declaration.

to DAGOC. Although other vessels were being considered until a very late stage, ultimately there were three head owners and three vessels involved:[7]

    a. The "MONA LISA", owned by Leonardo Shipping Inc.

    b. The "NEW FLAMENCO", owned by Fulton Shipping Inc.

    c. The "OCEAN COUNTESS", owned by Maximus Navigation Ltd.

21. Mr. Pallis obtained confirmation that the vessels would be available for use by DAGOC at the Asia Games and that the head owners were in principle prepared to charter them to RSM for this purpose.[8]

22. On 20 October 2006 a charter party was signed between RSM and Leonardo Shipping Inc in respect of MONA LISA (exhibited at pages 183c to 183k). No contracts were signed with Fulton Shipping Inc and Maximus Navigation Ltd at this stage, although they were aware of the position and prepared in principle to enter into contracts with RSM.[9]

23. Mr. Al-Abdulla, DAGOC's legal advisor,[10] arrived in Greece to finalise negotiations on 21 October 2006. A meeting then took place at Mr. Al-Abdullah's hotel, which began early in the evening of Sunday 23 October 2006 and concluded early in the morning of Monday 24 October 2006.[11]

24. By the end of the meeting, the terms of the charter parties had been agreed and hard copies were printed off and signed by Mr. Pallis and Mr. Al-Abdulla, in the presence of Mr. Panagiotis Kritikos (RSM's Greek lawyer) and Mrs Maria Avgerinou of DAGOC.[12]

---

[7]     Paragraph 13 of Mr. Pallis' Declaration.
[8]     Paragraph 19 of Mr. Pallis' Declaration.
[9]     Paragraph 21 of Mr. Pallis' Declaration.
[10]     In his declaration, he describes himself as "outside counsel" to DAGOC (paragraph 6).
[11]     Paragraph 23 of Mr. Pallis' Declaration.
[12]     Paragraph 25 of Mr. Pallis' Declaration and page 4 of RSM's memorandum in opposition to the motion.

25. These contracts are three identical time charter parties dated 23 October 2006 pursuant to which RSM agreed to let and DAGOC agreed to hire, for a period commencing on 5 November 2006 and terminating on 30 December 2006 for the purposes of providing floating hotel accommodation and related services during the Asian Games:

    a. The passenger ship "MONA LISA" ("the MONA LISA Charter", exhibited at pages 184 to 211);

    b. The passenger ship "NEW FLAMENCO" ("the NEW FLAMENCO Charter", exhibited at pages 212 to 236);

    c. The passenger ship "OCEAN COUNTESS" ("the OCEAN COUNTESS Charter", an unsigned copy is exhibited at pages 237 to 262).

26. Pursuant to the express terms of the MONA LISA Charter, the NEW FLAMENCO Charter and the OCEAN COUNTESS Charter (together the "Charters"):

"7.2    The hire which shall include all costs, including all fuel, and the cost of Services outlined in Schedule 1 is hereby agreed to be US$ 10,051,200. ...

7.3    Payment of hire will be secured by a First Class Bank Guarantee draft of which is attached at Schedule 3 and will be paid as follows:

    (i)    fifty (50%) of the total hire when the VESSEL arrives at the nominated place of delivery to be paid after the VESSEL has been inspected and accepted by CHARTERER's inspector as per Article 6.2 ...
    (ii)    Subject to Article 7.7, the remaining fifty (50%) of the total hire shall be paid after redelivery of the VESSEL at the end of the Charter Period.

7.4    The Bank Guarantee will be delivered to the OWNER within 2 working days from the date this Charter Party has been signed by both parties. ...

29 ... The Charter Party shall be governed by and construed in accordance with English law. Any dispute arising under the Charter Party shall be decided by the English Courts to whose exclusive jurisdiction the parties hereby agree."

27. At the time the Charters were signed, Mr. Al-Abdulla said that Mr. Al Qahtani would have to approve the contracts before they became binding on DAGOC and agreed to provide copies to Mr. Pallis the next day. At about 10am on 24 October 2006 Mr. Al-Abdullah called Mr. Pallis and said, "I have good news. Mr. Al Qahtani has signed the contracts. Congratulations."[13]

28. Later that day Mr. Al-Abdullah sent Mr. Pallis copies of the bank guarantees that had been issued by Qatar National Bank in accordance with Clauses 7.3 and 7.4 of the Charters (exhibited at pages 263 to 268).[14]

29. On the same day, Mr. Al-Abdulla sent RSM a soft copy of the OCEAN COUNTESS Charter. That soft copy was the only copy of any of the Charters which RSM had until DAGOC disclosed the signed copies of the MONA LISA Charter and the NEW FLAMENCO Charter in the context of the US maritime attachment proceedings.[15]

30. Because DAGOC had delayed reaching agreement until a very late stage, RSM could not contract back to back contemporaneously with the head owners of the vessels and with DAGOC. In performance of the Charters, RSM conducted further discussions with Leonardo Shipping Inc, Fulton Shipping Inc and Maximus Navigation Limited, with whom RSM had agreements in principle.[16]

31. There was a meeting for this purpose in Athens on the morning of 25 October 2006 which representatives of all three head owners attended. Majestic International Cruises ("Majestic") were the managers of the OCEAN COUNTESS and also the passenger ship "OCEAN MAJESTY".

32. After this meeting, Mr. Zalocosta of Majestic approached DAGOC directly and negotiations between RSM and Majestic in respect of the OCEAN COUNTESS ceased.

---

[13]     Paragraphs 27 to 28 of Mr. Pallis' Declaration.
[14]     Paragraph 29 of Mr. Pallis' Declaration and paragraphs 7 to 9 of the draft Particulars of Claim.
[15]     Page 5 of RSM's memorandum of law in opposition to the motion and paragraphs 27 and 30 of Mr. Pallis' Declaration.
[16]     Paragraph 38 of Mr. Pallis' Declaration.

Knowing that DAGOC was in discussions with Majestic, RSM offered them other vessels in substitution for OCEAN COUNTESS but they did not accept the same.[17]

33. Negotiations in respect of MONA LISA and NEW FLAMENCO continued and, in performance of the MONA LISA Charter and the NEW FLAMENCO Charter, on or around 26 October 2006, RSM time chartered (a) MONA LISA from Leonardo Shipping Inc and (b) NEW FLAMENCO from Fulton Shipping Inc (respectively), with a redelivery dated of 30 December 2006 (exhibited at pages 268a to 268q).[18]

34. On 28 October 2006, in a telephone conversation between Mr. Al-Abdulla and Mr. Pallis, Mr. Al-Abdulla informed Mr. Pallis that DAGOC had decided not to proceed with the MONA LISA Charter or the NEW FLAMENCO Charter with RSM, as explained by Mr. Pallis at paragraph 49 of his Declaration:

"... I said to Mr. Al-Abdullah that I understood that he had asked Mr. Kapsalis [of Monarch Classic Cruises, who represented Leonardo Shipping Inc and Fulton Shipping Inc] to give him a proposal for the "MONA LISA" and "NEW FLAMENCO" to contract directly with [DAGOC]. I asked him what happened and why he had done that. He said "Yes, we prefer to go direct with them": He also said, "Let us take the vessels from them [i.e. Leonardo and Fulton] and you take a commission from them." I said to Mr. Al Abdullah that I was reserving my rights."

35. Although Mr. Pallis spoke to Mr. Al-Abdulla again and sent e-mails to persuade him to change his mind, this was to no avail.[19]

36. On or about 2 November 2006, DAGOC entered into two new time charter agreements for MONA LISA and NEW FLAMENCO directly with, respectively, Leonardo Shipping Inc and Fulton Shipping Inc. Further, on or about 2 November 2006, DAGOC entered into a time charter agreement for OCEAN MAJESTY directly with its head owner.[20]

---

[17]  Paragraphs 34, 42 and 43 of Mr. Pallis' Declaration.
[18]  Paragraphs 10 to 11 of the draft Particulars of Claim and paragraph 45 of Mr. Pallis' Declaration.
[19]  Paragraph 49 of Mr. Pallis' Declaration.
[20]  Paragraph 24 of Mr. Al-Abdulla's Declaration.

37. In the premises, DAGOC renunciated and/or repudiated the Charters so as to discharge RSM from further performance of the Charters. Further or alternatively, in the premises, DAGOC prevented RSM from performing its obligations under the Charters.

38. RSM's failure and/or inability to perform the Charters constituted and communicated RSM's acceptance of DAGOC's renunciation and/or repudiation of the Charters.

39. If DAGOC had not renunciated and/or repudiated the OCEAN COUNTESS Charter, by negotiating directly with Majestic and entering a time charter agreement in respect of another ship managed by Majestic, negotiations between Majestic and RSM would have been successful and RSM would have entered a time charter agreement in respect of OCEAN COUNTESS with Maximus Navigation Ltd.[21]   The lump sum hire being negotiated for that vessel was US$6,400,000.[22]

40. As set out in the draft Particulars of Claim, by reason of DAGOC's breaches of the Charters, RSM has suffered the following loss and damage:

## PARTICULARS

In respect of the MONA LISA Charter:

| | |
|---|---|
| Hire RSM would have earned under the MONA LISA Charter | US$10,051,200 |
| Less hire that RSM would have been liable to pay to Leonardo Shipping Inc | US$6,600,000 |
| Total: | US$3,451,200 |

In respect of the NEW FLAMENCO Charter:

Hire RSM would have earned under

---

21    Paragraph 44 of Mr. Pallis' Declaration.
22    Paragraph 34 of Mr. Pople's Declaration.

| | | |
|---|---|---|
| the NEW FLAMENCO Charter | | US$10,051,200 |
| Less hire that RSM would have been liable | | |
| to pay Fulton Shipping Inc | | US$5,565,000 |
| | Total: | US$4,486,200 |

In respect of the OCEAN COUNTESS Charter:

| | | |
|---|---|---|
| Hire RSM would have earned under | | |
| the OCEAN COUNTESS Charter | | US$10,051,200 |
| Less hire that RSM would have been liable | | |
| to pay to Maximus Navigation Ltd | | US$ 6,400,000 |
| | Total: | US$3,651,200 |

| | |
|---|---|
| Less expenses RSM would have incurred had the | |
| Charters been performed, namely the cost of | |
| hospitality services in the sum of: | US$200,000 |

| | |
|---|---|
| **TOTAL:** | **US$11,388,600** |

41. Further, RSM claims interest as set out at paragraph 21 of the draft Particulars of Claim.

## E.    SERVICE OUT OF THE JURISDICTION

42. DAGOC's registered address is at Suhaim Bin Hamad Street, P.O. Box 32006, Doha, Qatar.  Accordingly, permission of the Court is required to serve the Claim Form on it pursuant to CPR 6.36.

43. As far as I am aware, DAGOC does not have an address in the jurisdiction at which the Claim Form could be served.

**(1)   Grounds for permission**

44. Part 6 of the Civil Procedure Rules was recently substituted by Civil Procedure (Amendment) Rules 2008 (SI 2008/2178), effective from 1 October 2008. The new rules are contained in a Special Supplement to the 2008 edition of the White Book.

45. This application is made pursuant to CPR 6.36 and paragraph 3.1(6)(c) and/or 3.1(6)(d) of Practice Direction B to Part 6 because, in relation to each of the Charters, there is a good arguable case that a claim is made in respect of a contract where the contract is governed by English law and/or contains a term to the effect that the court shall have jurisdiction to determine any claim in respect of the contract.

46. The Charters are described at section D above. DAGOC may wish to argue that there were no binding agreements between DAGOC and RSM for the reasons set out at section F2 below. For the reasons set out below, I believe that there is a good arguable case that the Charters were binding.

47. Each Charter contains an exclusive jurisdiction and choice of law clause in favour of the English Courts and English law respectively. Article 29 states:

"29 ... The Charter Party shall be governed by and construed in accordance with English law. Any dispute arising under the Charter Party shall be decided by the English Courts to whose exclusive jurisdiction the parties hereby agree."

48. DAGOC may wish to argue that Greek or Qatari law applies to the Charters because the Charters were at least in part negotiated in Greece and the ships were based in Greece or because DAGOC is based in Qatar and the Charters would have been performed in Qatar because the ships were to be used as floating hotels for the Asian Games.[23]

---

[23]     See pages 8 to 10 of DAGOC's memorandum in support of its motion.

49. These contentions are unfounded because the parties have expressly chosen English law as the governing law of the Charters. The governing law of the Charters according to Article 3 of the Rome Convention (implemented into English law by the Contracts (Applicable law) Act 1990) is English law.

**(2)    Serious Issue to be tried**

50. I believe, as does Mr. Pallis on behalf of RSM, that the claims in respect of the Charters each show a serious issue to be tried, and have a reasonable prospect of success.

*Possible arguments on the merits of the claims*

51. In the course of the US maritime attachment proceedings, DAGOC has raised arguments on the merits of RSM's claims[24] and there are other possible arguments which DAGOC may wish to raise. These arguments are considered in turn below, in the interests of giving the Court a full and fair picture of all (potentially) relevant arguments.

52. Taking into account these counter-arguments, my view remains that RSM's claims have a reasonable prospect of success.

(i)    The existence of a binding agreement

53. DAGOC may wish to argue that it was not bound by the Charters, because:

   a. Only Mr. Al-Qahtani was authorised to bind DAGOC and he never authorised any agreement with RSM and never agreed to bind DAGOC with regard to any

---

[24] In the context of the US maritime attachment proceedings, RSM did not allege that the OCEAN COUNTESS Charter had been breached until DAGOC brought its motion to vacate the maritime attachment, for the reasons explained at paragraphs 33-4 of John Pople's Declaration. Therefore the arguments raised by DAGOC in the US maritime attachment proceedings primarily relate to the MONA LISA Charter and the NEW FLAMENCO Charter, although it may raise similar arguments in respect of the OCEAN COUNTESS Charter.

13

responsibility or obligation to RSM.[25] DAGOC may specifically rely on Mr. Freedman's Declaration and attachments which include e-mails between 27 and 30 October 2006[26] which may suggest that a binding agreement had not yet been reached.

    b. DAGOC did not enter into a valid and enforceable agreement with RSM under Qatari law for various reasons including that DAGOC did not obtain the necessary approvals and carry out consultation as required by Qatari law.[27]

    c. There was no enforceable contract under Greek law for various reasons including that Mr. Al-Qahtani never signed any agreement with RSM.[28]

    d. Mr. Pallis did not have authority to represent the owners and did not have possession of the vessels at the time of entering into the Charters.[29] DAGOC may specifically rely on Mr. Freedman's Declaration and attachments including a letter dated 29 October 2008 from Mr. Pallis which may suggest that he was representing RSM as a ship owner.[30]

54. Notwithstanding these arguments, RSM's claims still have a reasonable prospect of success.

55. First, as set out above, it is Mr. Pallis' evidence that Mr. Al-Abdulla signed the Charters and confirmed to him that Mr. Al-Qahtani had approved them. This is consistent with the fact that shortly afterwards DAGOC sent RSM three bank guarantees in the terms required by the Charters.

---

[25]     Paragraphs 10, 15 and 16 of Mr. Al-Abdulla's Declaration and paragraph 3 of Mr. Al-Qahtani's Declaration.
[26]     Paragraphs 1 to 4 of Mr. Freedman's Declaration and exhibits A to C of that declaration.
[27]     Paragraph 17 of Mr. Moubaydeen's Declaration and pages 8 to 12 of DAGOC's memorandum in support of its motion.
[28]     Paragraph 8 of Mr. Kalamitsis' Declaration and pages 8 to 12 of DAGOC's memorandum in support of its motion.
[29]     Paragraph 8 of Mr. Kalamitsis' Declaration, paragraph 19 of Mr. Al-Adbulla's Declaration, and page 4 of DAGOC's memorandum in support of its motion.
[30]     Paragraphs 1 to 4 of Mr. Freedman's Declaration and exhibit C of that declaration.

56. Secondly, the position as a matter of Qatari or Greek law is irrelevant to whether the Charters are valid and enforceable. Pursuant to Clause 29 of each of the Charters, they are to be "governed by and construed in accordance with English law".[31]

57. Pursuant to Articles 3 of the Rome Convention, the governing law of the Charters is English law.

58. Pursuant to Article 8(1) of the Rome Convention, the existence and validity of a contract shall be determined by the law which would govern it under the Rome Convention if the contract was valid. In this case, it is English law.

59. Pursuant to Article 9(2) of the Rome Convention, a contract concluded between persons who are in different countries is formally valid if it satisfies the formal requirements of the law which governs it under this Convention or the law of one of those countries. In this case, the law which governs it under the Rome Convention is English law.

60. DAGOC may argue that, pursuant to Article 1(2)(f), the Rome Convention does not apply to the narrow question of whether an agent is able to bind a principal, or an organ is able to bind a company or body corporate or unincorporated, to a third party. However, this is not relevant, given that DAGOC sent RSM three bank guarantees in the terms required by the Charters, indicating that it did approve the Charters, regardless of whether Mr. Al-Abdulla was authorised to bind DAGOC or not.

61. Thirdly, Mr. Pallis' evidence is that he obtained confirmation from the three head owners that they were in principle prepared to charter the vessels before entering into the Charters with DAGOC.[32] Although Mr. Al-Abdulla states that on or about 23 October 2006, he learned from the owners of the vessels that Mr. Pallis did not have authority to represent

---

[31] In the US maritime attachment proceedings, DAGOC argued that, according to US federal law, a court does not apply the law designated in the "choice of law" clause of a contract when the issue of whether a contract was ever formed is in question, see pages 4 to 6 of its reply memorandum in support of its motion. This argument is irrelevant to the present application in an English court.

[32] Paragraphs 19 and 38 of Mr. Pallis' Declaration.

15

the owners nor did he have possession of the vessels as a disponent owner,[33] Mr. Pallis explains that the head owners were prepared to charter the vessels and, further, that Mr. Al-Abdulla could not have thought that RSM was the actual owner of the vessels.[34]

62. Articles 1.1 and 1.2(a) of Charters states:

> "Each party to this Charter Party represents to the other that their representatives who sign the Charter Party are legally authorised to do so and specifically that [RSM] have the authority of the ultimate owners of the VESSEL and contract jointly and severally on their behalfs. ... [RSM] warrants to [DAGOC] that the VESSEL to be supplied under this Charter Party is: (a) in the ownership or legal possession of [RSM]..."

63. Even if Mr. Pallis was in breach of these provisions, the consequences would be a damages claim by DAGOC for breach of warranty. In the circumstances, it would depend on what loss DAGOC could be proved. It is also possible that DAGOC may wish to argue that RSM's authority was a condition precedent to DAGOC being bound by the Charters. It is submitted that these arguments would need to be resolved at trial.

64. The Court will note that RSM does not have a signed copy of the OCEAN COUNTESS Charter. This is because DAGOC did not provide RSM with copies of the Charters, as Mr. Al-Abdulla had agreed to, and instead only sent Mr. Pallis a soft copy of the OCEAN COUNTESS Charter. The first time that RSM was provided with signed copies of the MONA LISA Charter and NEW FLAMENCO Charter was during the US maritime attachment proceedings.[35] However, a signed copy of the OCEAN COUNTESS Charter has not yet been provided by DAGOC.[36]

(ii)    The loss recoverable

---

[33]    Paragraph 19 of Mr. Al-Abdulla's Declaration.
[34]    Paragraphs 19, 36, 37 and 38 of Mr. Pallis' Declaration.
[35]    Paragraphs 27 and 30 of Mr. Pallis' Declaration.
[36]    The reason for this may be because, at the time when the MONA LISA Charter and the NEW FLAMENCO Charter were disclosed, the OCEAN COUNTESS Charter was not at issue.

65. DAGOC may wish to argue that RSM is not entitled to recover any indirect or consequential damages as a result of Article 21.3 of the Charters, and yet is making claims for sums in excess of any direct loss it could have suffered.[37] Article 21.3 states that RSM and DAGOC:

"... shall in no event be liable one to the other for indirect or consequential losses including, but not limited to, loss of revenue, profit or anticipated profit however arising and whether or not due in whole or in part to the negligence of either party except to the extent of any agreed liquidated damages provided for in this Charter Party."

66. The losses claimed by RSM which were caused by DAGOC's renunciation and/or repudiation of the Charters are set out at section D above. These are not indirect or consequential, but are direct losses resulting from DAGOC's failure to pay the sums due pursuant to the Charters.

67. DAGOC may wish to argue that RSM has not suffered any loss, as even if DAGOC had not renunciated the Charters, RSM would not have been able to perform them.

68. In relation to the OCEAN COUNTESS Charter, DAGOC may wish to argue that, because RSM did not enter into a charter party with the head owners of the OCEAN COUNTESS, Maximus Navigation Limited, RSM could not have performed the OCEAN COUNTESS Charter.

69. However, it is RSM's case that if DAGOC had not renunciated and/or repudiated the OCEAN COUNTESS Charter, by negotiating directly with Majestic (the managers of the OCEAN COUNTESS) and entering a time charter agreement in respect of another ship managed by Majestic, negotiations between Majestic and RSM would have been successful and RSM would have entered a time charter agreement in respect of OCEAN COUNTESS with Maximus Navigation Ltd.[38]

---

[37]   Page 2 of DAGOC's memorandum in support of its motion and page 10 of DAGOC's reply memorandum in support of its motion.
[38]   Paragraph 44 of Mr. Pallis' Declaration.

70. In relation to the MONA LISA Charter and the NEW FLAMENCO Charter, DAGOC may wish to argue that, even if DAGOC had not renunciated and/or repudiated theses Charters, RSM would not have been able to perform them because it would not have been able to provide the guarantees required by the charter parties which RSM entered into with Leonardo Shipping Inc and Fulton Shipping Inc in relation to MONA LISA and NEW FLAMENCO respectively.

71. In respect of the MONA LISA, the charter party dated 26 October 2006 required RSM to provide a bank guarantee in the amount if US$6.6 million to be issued by Qatar National Bank in the name Leonardo Shipping Inc. within a few days[39] from the signing of the charter party and authorising payment to Leonardo Shipping Inc on the date of delivery of the vessel (Clause 5((iv)(1)).

72. In respect of the NEW FLAMENCO, the charter party required RSM to provide a bank guarantee in the amount of US $5 million by 29 October 2006 to Fulton Shipping Inc, such guarantee to be payable upon arrival of the vessel in Doha. The balance of US$565,000 was to be paid on 3 January 2007 (Clause 5).

73. RSM's response is that, if DAGOC had not renunciated and/or repudiated the Charters, RSM would have been able to perform the charter parties with Leonardo Shipping Inc and Fulton Shipping Inc, as it would have succeeded in obtaining DAGOC's consent to assignment of the bank guarantees that DAGOC provided to RSM to the head owners and/or persuaded DAGOC to provide different guarantees than those required by the terms of the Charters in favour of Leonardo Shipping Inc and Fulton Shipping Inc.

74. Even if RSM failed to do so, Mr. Pallis' business associate, Mr. Victor Retis, had agreed on 25 October 2006 to provide funds up to US$30,153,600 for this purpose. As consideration for any such funds that may be provided Mr. Pallis agreed to pay interest to Mr. Restis in respect of any amount specifically requested at a standard banking rate and as collateral for

---

[39] The exact number of days is unclear as the clause reads, "within two (4) banking days". English rules of construction suggest that the words prevail.

any such funds that may be made available, Mr. Pallis agreed to allocate the income from the vessels owned or managed by RSM.[40]

### (3) England and Wales constitutes the proper form

75. I believe that the Courts of England are the most appropriate forum for RSM's claims to be heard in the interests of the parties and of justice.

76. Each of the Charters is expressly governed by English law and contains an exclusive jurisdiction clause in favour of the English courts (Article 29).

77. DAGOC may wish to argue that Qatar is the most appropriate forum for RSM's claims to be heard because DAGOC is based there and because the Charters would have been performed there as the ships were to be used as floating hotels in the Asian Games. Further, many if not all of DAGOC's witnesses are likely to be based in Qatar.[41]

78. DAGOC may also wish to argue that Greece is the most appropriate forum as at least some of the negotiations for the Charters took place in Greece and the ships that were the subject matter of the Charters were based in Greece.

79. However, I believe that these factors are far from sufficient to justify the rejection of the exclusive jurisdiction clauses in favour of the English courts.

### (4) General Discretion

80. In the all the circumstances set out above, it is just and convenient for the Court to exercise its discretion by granting permission to serve out of the jurisdiction.

### F. CONCLUSION

---

[40] See the minutes of the meeting dated 25 October 2006 (exhibited at page 269) and the statement of Mr. Restis dated 28 December 2008 (exhibited at page   ).
[41] See pages 8 to 10 of DAGOC's memorandum in support of its motion.

81. For the reasons set out above, I believe that RSM's claims each have a reasonable prospect of success and fall within at least one of the heads of jurisdiction in paragraph 3.1 of Practice Direction B to CPR Part 6. I also believe that England and Wales is the most appropriate forum for the determination of each of them; and that it is appropriate for the court to exercise its general discretion to allow RSM to serve the Claim Form and Particulars of Claim on DAGOC in Qatar at its address: Suhaim Bin Hamad Street, P.O. Box 32006, Doha, Qatar, or elsewhere in Qatar, by a method permitted under the laws of Qatar.

82. I respectfully ask the Court to grant permission to serve out of the jurisdiction and make an order in the terms of the draft attached to the application notice.

83. I believe that the facts stated in this Witness Statement are true.

.....*[signature]*.....          .....4.13.29.....

Juliet Blanch                    Date

EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RONDA SHIP MANAGEMENT INC.,                    :
                                               :
                          Plaintiff,           :          09 Civ. _____
                                               :
        - against -                            :
                                               :
DOHA ASIAN GAMES ORGANISING                    :
COMMITTEE a/k/a DAGOC,                          :
                                               :
                          Defendant.           :
------------------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT
## AND IN SUPPORT OF APPLICATION TO SEAL THE FILE

State of Connecticut  )
                      )        ss: SOUTHPORT
County of Fairfield   )

        Nancy R. Siegel, being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and represent the Plaintiff herein.  I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure and to seal this file.

## DEFENDANT IS NOT PRESENT IN THE DISTRICT

        2.      I have attempted to locate the Defendant, DOHA ASIAN GAMES

ORGANISING COMMITTEE a/k/a DAGOC, within the Southern District of New York.  As

part of my investigation to locate the Defendant within this District, I checked the telephone

company information directory, as well as the white and yellow pages for New York listed on

the Internet or World Wide Web, and did not find any listing for the Defendant.  Finally, I

checked the New York State Department of Corporations' online database which showed no listings or registration(s) for the Defendant.

3.    I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4.    Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and/or intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendants.

5.    In particular, upon information and belief, the Court Registry will soon issue a check in the approximate amount of $9,300,000.00 to Defendant's New York counsel, Patton Boggs, for the benefit of Defendant in the Southern District of New York.

6.    The forthcoming check to be issued by the Court Registry is a negotiable instrument representing funds to be credited to Defendant and constitutes attachable property.

7.    Funds held for the benefit of the Defendant by their attorneys in this District may be attached by service of an attachment order on those same attorneys, even if those funds were initially brought into the district by virtue of an EFT.  *See e.g. Order dated November 2, 2009 issued by the Second Circuit Court of Appeals in the matter of India Steamship Company Ltd. v. Kobil Petroleum Ltd.,* 09 Civ. 4564 annexed hereto as Exhibit 1 (finding that request for temporary stay of release of funds was moot because funds had already been released by the Court Registry, notwithstanding the fact that the check released by the Court Registry was attached by Plaintiff in the hands of defendant's attorneys); *See also Pioneer Shipping S.A. v. Argonaut Shipping Int'l,* 02 Civ. 521, 2002 U.S. Dist. LEXIS 8482 (E.D. La. 2002) annexed

hereto as Exhibit 2 (finding that funds held by defendant's law firm for defendant's benefit may be attached pursuant Rule B attachment issued against Defendant).

8.    In the *India Steamship* case, *supra*, the plaintiff initially restrained the defendant's funds in the form of EFTs passing through the district. Those funds were subsequently transferred to the Court Registry.

9.    The Court later ordered that all funds be released from the Court registry given that EFTs are no longer attachable property under Rule B pursuant to *Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009).

10.    A check was subsequently issued from the Court registry to defendant's counsel in New York for the benefit of Defendant. The plaintiff served then an Ex Parte Order of Attachment on Defendant's counsel as garnishee and attached the funds which were being held by Defendant's counsel for Defendant's benefit in New York.

11.    Defendant's counsel vehemently objected to the attachment of the funds they were holding on Defendant's behalf in the Southern District of New York. However, these funds remain attached, and no subsequent order providing for the the release of the funds has been issued by the District Court or the Second Circuit.

12.    In the way of background for this matter, Plaintiff previously filed a related action against Defendant under docket #07 Civ. 94 (CM). *See docket sheet annexed hereto as Exhibit "3."* Pursuant to an Ex Parte Order of Attachment issued therein, electronic funds transfers in the approximate amount of $10,000,000.00 were restrained.

13.    On or about December 10, 2009, the Court vacated the Ex Parte Order of Attachment issued against Defendant and dismissed the case in light of the *Jaldhi* decision. *See Order Vacating Attachment and Dismissing case annexed hereto as Exhibit "4."* The automatic

stay provided by Federal Rule of Civil Procedure 62(a) requiring that execution of the December 10, 2009 Order cannot be carried out until December 25, 2009 at the earliest.

14.     Such a dismissal is necessarily without prejudice. *See Grand Rodosi, Inc. v. Zhoushan IMC-YY Shipyard & Eng'g Co.,* 09 Civ. 3875 (JSR), 2009 U.S. Dist. LEXIS 110909, at \*2 (S.D.N.Y. Nov. 30, 2009)(holding that "a dismissal pursuant to *Jaldhi* should be without prejudice").

15.     As set forth above, funds released by the Court registry to the Defendant's Attorneys are to be held for Defendant's benefit and this squarely comes within the scope of intangible and tangible property that may be attached pursuant to Supplemental Rule B.

## PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

16.     Plaintiff seeks an Ex Parte Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R. Siegel, Coleen A. McEvoy, Anne C. LeVasseur or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold property of, for or on account of, the Defendants.

17.     Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendants.

18.     To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

19.     Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

20.     Further, in order to avoid the need to physically serve the garnishees/banks daily] and repetitively, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service throughout the remainder of the day upon which service is made commencing from the time of such service; and such service to be further deemed effective through the end of the next business day, provided that another service is made that day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

## PRAYER FOR RELIEF TO TEMPORARILY SEAL CASE

21.     Upon information and belief, it is the practice of many law firms in the maritime

bar to review the daily electronic docket sheet of the Southern District of New York for all

maritime actions filed in the district and inform the defendant(s) named therein of any Ex Parte

Orders of Attachment pending against them, thus defeating the purpose of the "Ex Parte"

application.

22.     Here, Defendant has appointed New York/New Jersey counsel, Patton Boggs,

who is likely monitoring the docket to determine if any of its clients are named as a defendant in

a newly filed action.

23.     In addition, if this case is not sealed, Defendant's counsel could easily come

across it, simply by typing Defendant's name into PACER.

24.     Once the Defendant is aware of this attachment, upon information and belief, it

will seek to remove any assets it has from the jurisdiction in the hopes of avoiding the

attachment.

25.     Furthermore, upon information of belief, it is the practice of certain publications,

specifically Tradewinds, to publish the names of defendants named in Ex Parte Orders of

Attachment, thus further defeating the purpose of the "Ex Parte" application.

26.     Upon information and belief, Tradewinds has very recently publicized the names

of parties in Rule B proceedings, the amount of the attachments, and other details of the actions,

thereby further defeating the purpose of the "Ex Parte" application.

27.     The Courts within the Southern District of New York have an interest in

preserving the efficacy of the Ex Parte Orders issued therein.  If Defendant is allowed to remove

all of its assets, including the funds to be released by the Court Registry in New York, Plaintiff

will have no hope of obtaining security for its claims since Defendant is no longer actively

operating.

28.     The above concerns and interests supersede the interest in maintaining a completely public docket, especially given that the public's access will only be limited temporarily until assets are attached and notice of attachment has been provided to the Defendant.

29.     Indeed, the public's access to Ex-Parte Orders of Maritime Attachment defeats their entire purpose, by depriving plaintiffs of the element of surprise and potential allowing defendants to re-route their funds to avoid the attachment, thus making the attachment remedy hollow.

30.     For the foregoing reasons, Plaintiff requests that the Court issue an Order temporarily sealing the court file in this matter, including the Verified Complaint and all other pleadings and Orders filed and/or issued herein until further notice of this Court or notification to the clerk that property has been attached.

31.     This request is narrowly tailored to meet Plaintiff's needs.  Once property is attached, the case should be unsealed, as the interest underlying sealing the case will have been largely eliminated.

Dated:      December 17, 2009
            Southport, CT


                                        _____
                                        Nancy R. Siegel



Sworn and subscribed to before me
this ___/7___ day of December 2009.


_____
Notary Public

-7-

Mary E. Fedorchak
Notary Public-Connecticut
My Commission Expires
November 30, 2011

# EXHIBIT 1

600629-00401

## MOTION INFORMATION STATEMENT

Docket Number(s): __09-4564__

Caption [use short title]

Motion for: Stay

Set forth below precise, complete statement of relief sought:
Stay of release of attached funds in court's registry pending appeal

India Steamship Company Limited,

Plaintiff,

-against-

Kobil Petroleum Limited,

Defendant.

MOVING PARTY: India Steamship Company Limited          OPPOSING PARTY: Kobil Petroleum Limited

☑ Plaintiff          ☐ Defendant
☐ Appellant/Petitioner          ☐ Appellee/Respondent

MOVING ATTORNEY: Jeremy J.O. Harwood, Esq.          OPPOSING ATTORNEY [Name]: Francis H. McNamara, Esq.
[name of attorney, with firm, address, phone number and e-mail]          [name of attorney, with firm, address, phone number and e-mail]
Jeremy J.O. Harwood, Esq.          Francis H. McNamara, Esq.
Blank Rome LLP          Cardillo & Corbett
405 Lexington Ave.          29 Broadway
New York, NY 10174 - 212-885-5000          New York, NY 10006
jharwood@blankrome.com          fmcnamara@cardillocorbett.com          212-344-0464

Court-Judge/Agency appealed from: SDNY - Judge Richard M. Berman

Please check appropriate boxes:          FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:

Has consent of opposing counsel:          Has request for relief been made below?    ☑ Yes    ☐ No
   A. been sought?    ☐ Yes    ☑ No
   B. been obtained?    ☐ Yes    ☑ No          Has this relief been previously sought    ☐ Yes    ☑ No
     in this Court?

Is oral argument requested?    ☐ Yes    ☑ No
(requests for oral argument will not necessarily be granted)          Requested return date and explanation of emergency:

Has argument date of appeal been set?    ☐ Yes    ☑ No          District Court ordered immediate release of attached funds without a hearing
If yes, enter date _____

Signature of Moving Attorney:
_Jeremy Harwood_    Date: November 2, 2009          Has service been effected?    ☑ Yes    ☐ No
    [Attach proof of service]

## ORDER

Before: Gerard E. Lynch, *Circuit Judge*

The funds in question having already been released to defendant's counsel, and plaintiff already having served a writ of attachment on defendant's counsel, the application for a stay of the order directing release of the funds from the District Court registry is DENIED as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

by

_Joy Fallek_
Joy Fallek, Administrative Attorney

# EXHIBIT 2

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 8482

Page 1 of 3

LexisNexis® *Total Research System*

Switch Client ┆ Preferences ┆ Sign Out ┆ [?] Help

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | Dossier ┆ History ┆

FOCUS™ Terms                          Search Within  Original Results (1 - 1)          Go →  Advanced...

Service: Get by LEXSEE®
Citation: 2002 U.S. Dist. LEXIS 8482

*2002 U.S. Dist. LEXIS 8482, ***

PIONEER SHIPPING S.A. VERSUS ARGONAUT SHIPPING INTERNATIONAL, ET AL

CIVIL ACTION NO. 02-521 SECTION "N"

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

2002 U.S. Dist. LEXIS 8482

May 6, 2002, Decided
May 6, 2002, Filed, Entered

**DISPOSITION:** **[*1]** Plaintiff's Motion to Compel Deposit of Garnished Funds into the Registry of Court and Determination of Ownership of Garnished Funds was granted in part and denied in part.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Pursuant to Supp. R. Certain Adm. & Mar. Cl. B(1), plaintiff shipper obtained an order or attachment and garnishment against all property of defendant transporter held by garnishee law firm. The shipper then moved to compel deposit of the garnished funds into the registry of the court and determination of ownership of the garnished funds.

**OVERVIEW:** In response to garnishment interrogatories, the law firm admitted that it held over $ 31,000 in trust for the transporter, but stated that $ 15,000 of the funds represented a retainer for legal services performed and to be performed in connection with a pending legal matter. When the garnishment was served, the law firm had earned less than $ 3,000 in fees from the transporter. The law firm acknowledged that the remaining money constituted property of the transporter. The law firm argued, however, that the remainder of the retainer should be exempted from garnishment because garnishing the retainer would hinder the transporter's ability to maintain legal representation. The law did not support the law firm's argument; client funds in the possession of a law firm were subject to garnishment even if they were given to the firm as a retainer. However, the court declined to compel the law firm to deposit the garnished funds into the registry of the court; the law firm had held the funds for more than two months subject to the garnishment order, and the court was confident that the firm would continue to do so.

**OUTCOME:** The court granted the motion in part; the court declared that $ 28,362 of the funds the law firm held in trust for the transporter constituted property of the transporter and remained subject to the garnishment order. The court denied the motion in all other respects.

**CORE TERMS:** garnishment, deposit, garnished, registry, attachment, garnishee's, wire, trust account, ownership, legal services, legal fees, client funds, remainder, vessel

**LEXISNEXIS® HEADNOTES**                                                                  ⊟ **Hide**

Legal Ethics > Client Relations > Client Funds
*HN1*⟱Under Louisiana law, where a client pays a lawyer an advance deposit against fees which are to accrue in the future on an hourly or other agreed basis, the funds remain the property of the client. La. Rev. Stat. tit. 37, ch. 4, appendix, art. XVI, rule 1.5(f)(3). As the fees are earned, the lawyer may transfer the funds from the trust account to his operating account without further authorization from the client. Rule 1.5(f)(3). More Like This Headnote

Civil Procedure > Judgments > Entry of Judgments > Enforcement & Execution > Garnishments
Civil Procedure > Remedies > Provisional Remedies > Garnishments
Legal Ethics > Client Relations > Client Funds
*HN2*⟱An attorney at law who possesses property for his client is subject to garnishment proceedings by the judgment creditor. More Like This Headnote

Civil Procedure > Judgments > Entry of Judgments > Enforcement & Execution > Garnishments
Legal Ethics > Client Relations > Client Funds
*HN3*⟱The general rule is that client's funds are not immunized from garnishment merely because they are in the hands of his attorney. Nor should the argument be relied on that counsel is entitled to retain the funds to secure payment of any fees due or to become due in any business for which he has been retained by the client before the service of process on him. More Like This Headnote

Civil Procedure > Counsel > General Overview
Civil Procedure > Remedies > Provisional Remedies > Garnishments
Governments > Courts > Court Personnel
*HN4*⟱Where the garnishee admits to debts, credits, or effects of the defendant, Supp. R. Certain Adm. & Mar. Cl. B(3)(a) requires that the property be held in the garnishee's hands or paid into the registry of the court. More Like This Headnote

**COUNSEL:** For PIONEER SHIPPING SA, plaintiff: Scott E. Oliphant, Murphy, Rogers & Sloss, New Orleans, LA.

**JUDGES:** KURT D. ENGELHARDT, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** KURT D. ENGELHARDT

OPINION

ORDER AND REASONS

Before the Court is plaintiff's Motion to Compel Deposit of Garnished Funds into the Registry of the Court and Determination of Ownership of Garnished Funds. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

Plaintiff, Pioneer Shipping S.A., commenced this action by obtaining an order of attachment and garnishment, pursuant to Supplemental Rule B(1), against all property of defendant, Argonaut Shipping International ("Argonaut"), held by garnishee, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P. ("Chaffe, McCall"). The stated purpose of the attachment was to obtain security for arbitration proceedings plaintiff has initiated against defendant for alleged breach of a charter party. In response to garnishment interrogatories, Chaffe, McCall admitted that it [*2] held $ 31,250 in trust for Argonaut, but stated that $ 15,000 of these funds represented a retainer for legal services performed and to be performed in connection with a matter pending in Section "L" of this Court. (Rec.Doc. 13, Exh. B at p.2). Argonaut had sent $ 5,000 of this amount directly to Chaffe, McCall to provide for these legal services and had sent the remainder ($ 26,250) to its husbanding agent, Swenson Bros. Shipping, Inc., to pay costs associated with discharging the chartered vessel at issue in that dispute. *Id.* When the owner of that vessel paid the costs associated with discharge, Swenson Bros. tried unsuccessfully to wire the $ 26,250 back to Argonaut. (Rec.Doc. 14 at p.2). Argonaut then asked Swenson to transfer the funds via check to Chaffe, McCall, who would retain $ 10,000 toward future legal fees and wire the remainder to Argonaut. Plaintiff served the garnishment order before Chaffe, McCall made the wire transfer.

Plaintiff now moves to have the ownership of the funds determined and to compel Chaffe, McCall to deposit the funds into the registry of the Court.

**II. LAW AND ANALYSIS**

*HN1* Under Louisiana law, where "the client pays the lawyer an advance [*3] deposit against fees which are to accrue in the future on an hourly or other agreed basis, the funds remain the property of the client." La. Rev. Stat. Title 37, Chap. 4, Appendix, Art. XVI, Rule 1.5(f)(3). As the fees are earned, the lawyer may transfer the funds from the trust account to his operating account without further authorization from the client. *Id.* At the time of the garnishment, Chaffe, McCall had earned only $ 2,887.31 in fees. Thus, the remaining $ 28,362.69 held in its trust account constituted the property of the Argonaut at the time of the garnishment.

Chaffe, McCall does not disagree. Rather, it argues that $ 12,112.69 (the unearned portion of the funds which had been designated as a deposit against future legal fees) should be exempted from the garnishment for policy reasons: garnishing these amounts will hinder Argonaut's ability to maintain legal representation. The law, however, is to the contrary. *See, e.g., Board of Trustees of East Baton Rouge Mtg. Fin. Authority v. All Taxpayers, 361 So. 2d 292, 295 (La. App. 1st Cir. 1978)* *HN2* ("An attorney at law who possesses property for his client is subject to garnishment proceedings by the judgment [*4] creditor."); George A. Riemer, Can They Do That?, *Garnishing Lawyer Trust Accounts, 58 ORE. ST. BAR BULL. 31 (July 1998)* ("client funds in a lawyer's possession are generally subject to garnishment by the client's creditors"); K.R. Newell, *Funds in Hands of His Attorney as Subject of Attachment or Garnishment by Client's Creditor, 35 A.L.R. 3d 1094 (1971)* *HN3* ("The general rule is that . . . client's funds are not immunized from garnishment merely because they are in the hands of his attorney . . . . Nor should the argument be relied on that counsel is entitled to retain the funds to secure payment of any fees due or to become due in any disbursement for which he has been retained by the client before the service of process on him."). Accordingly, the funds held by Chaffe, McCall (except for the $ 2,887.31 earned before service of the garnishment) are the property of Argonaut and are subject to garnishment. Whether Chaffe, McCall is entitled to a lien on any portion of these funds and, if so, the priority of such lien, is not before the Court. Nor has Argonaut challenged the reasonableness of the amount of the security.

Plaintiff argues that, because Chaffe, McCall has [*5] made the argument addressed above, it should be compelled to deposit the garnished funds into the registry of the Court. The Court disagrees. *HN4* Where, as here, the garnishee admits to debts, credits, or effects of the defendant, Rule B(3)(a) requires that the property "be held in the garnishee's hands or paid into the registry of the court." Fed. R. Civ. P. Supp. Rule B(3)(a) (emphasis added). The attorneys at Chaffe, McCall are officers of this Court. For more than two months, they have held the funds subject to the garnishment order, and the Court is confident that they will continue to do so, subject to further order of this Court.

**III. CONCLUSION**

Accordingly, for the foregoing reasons, IT IS ORDERED that plaintiff's Motion to Compel Deposit of Garnished Funds into the Registry of the Court and Determination of Ownership of Garnished Funds is GRANTED IN PART, in that the Court finds that $ 28,362.69 of the funds in Chaffe, McCall's trust account constitute the property of Argonaut and remain subject to the garnishment order, to be held by Chaffe, McCall subject to further order of the Court, and DENIED IN PART, in that it is denied in all other respects.

[*6] New Orleans, Louisiana, this 6th day of May, 2002.

KURT D. ENGELHARDT

UNITED STATES DISTRICT JUDGE

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 8482

Page 3 of 3

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 8482**
View: Full
Date/Time: Thursday, December 17, 2009 - 12:27 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

LexisNexis® About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT 3

CLOSED, ECF

# U.S. District Court
# United States District Court for the Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:07-cv-00094-CM

| | |
|---|---|
| Ronda Ship Management Inc. v. Doha Asian Games Organising Committee | Date Filed: 01/05/2007 |
| | Date Terminated: 12/10/2009 |
| Assigned to: Judge Colleen McMahon | Jury Demand: None |
| Demand: $9,999,000 | Nature of Suit: 120 Contract: Marine |
| Cause: 28:1333 Admiralty | Jurisdiction: Federal Question |

**Plaintiff**

**Ronda Ship Management Inc.**       represented by   **Nancy Rebecca Siegel**
Lennon, Murphy & Lennon, LLC
The GrayBar Building
420 Lexington Avenue
Suite 300
New York , NY 10170
(212) 490-6050
Fax: (212) 490-6070
Email: nrs@lenmur.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick F. Lennon**
Lennon, Murphy & Lennon, LLC
The GrayBar Building
420 Lexington Avenue
Suite 300
New York , NY 10170
(212) 490-6050
Fax: (212) 490-6070
Email: pfl@lenmur.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Doha Asian Games Organising Committee**
*also known as*
DAGOC       represented by   **Brendan Michael Walsh**
Patton Boggs, LLP(NJ)
One Riverfront Plaza
6th Floor
Newark , NJ 07102
(973) 848-5600 x4222

Fax: (973) 848-5601
Email: bwalsh@pattonboggs.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Sean Westenberger**
Patton Boggs, LLP(NJ)
One Riverfront Plaza
6th Floor
Newark , NJ 07102
(973) 848-5600
Fax: (973) 848-5601
Email:
ewestenberger@pattonboggs.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shane Howard Freedman**
Patton Boggs, LLP(NJ)
One Riverfront Plaza
Newark , NJ 07102
(973)848-5623
Email: sfreedman@pattonboggs.com
*TERMINATED: 01/29/2009*

**Movant**

**Promoseven Holdings B.S.C.C.**       represented by  **Robert Steven Goodman**
Mound Cotton Wollan & Greengrass
(NYC)
One Battery Park Plaza
9th Floor
New York , NY 10004
(212) 804-4200
Email: rgoodman@moundcotton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/05/2007 | 1 | COMPLAINT against Doha Asian Games Organising Committee. (Filing Fee $ 350.00, Receipt Number 601622)Document filed by Ronda Ship Management Inc..(lb, ) (Entered: 01/08/2007) |
| 01/05/2007 | | SUMMONS ISSUED as to Doha Asian Games Organising Committee. (lb, ) (Entered: 01/08/2007) |
| 01/05/2007 | | Magistrate Judge James C. Francis is so designated. (lb, ) (Entered: 01/08/2007) |
| 01/05/2007 | | Case Designated ECF. (lb, ) (Entered: 01/08/2007) |
| 01/05/2007 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. |

| | | Document filed by Ronda Ship Management Inc..(lb, ) (Entered: 01/08/2007) |
|---|---|---|
| 01/05/2007 | 3 | ORDER directing the clerk to issue Maritime Attachment and Garnishment against all tangible or intangible property belonging to, claimed by or being held for dft by the banks as further set forth in this order in an amount up to and including $18,903,194.26.The supplemental process enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court. (Signed by Judge Barbara S. Jones on 1/5/2007) (rt, ) (Entered: 01/09/2007) |
| 01/05/2007 | | MARITIME ATTACHMENT AND GARNISHMENT ISSUED as to Doha Asian Games Organising Committee on 1/5/2007 in the amount of $18,903,194.26. (rt, ) (Entered: 01/09/2007) |
| 01/09/2007 | 4 | AFFIDAVIT of N. Peterson in Support. Document filed by Ronda Ship Management Inc.. (Peterson, Nancy) (Entered: 01/09/2007) |
| 02/20/2007 | 5 | SCHEDULING ORDER RE: Initial Pretrial Conference set for 3/23/2007 10:30 AM before Judge Colleen McMahon in courtroom 21B, 500 Pearl Street, New York, New York 10007. (Signed by Judge Colleen McMahon on 2/20/2007) (jmi) Additional attachment(s) added on 2/28/2007 (Espinell, Antonia). (Entered: 02/21/2007) |
| 03/23/2007 | | MEMORANDUM TO THE DOCKET CLERK; Hearing held on 3/23/07 before Judge McMahon; Decision: Plaintiff attended scheduled 3/23/07 conference, defendant did not. conference adjourned until 3/29/07 at 2 p.m. (djc) (Entered: 04/05/2007) |
| 03/30/2007 | 6 | ENDORSED LETTER addressed to Judge Colleen McMahon from Lauren C. Davies dated 3/28/07 re: Defendant has only recently received notice of attachment and the pre-trial conference that the parties and the Court would be best served by adjourning the conference currently scheduled for March 29, 2007 at 2:00 p.m. until June 22, 2007 at 10:15 a.m. a date proposed by your Clerk as acceptable. ENDORSEMENT: Adjournment GRANTED until 6/22/07 at 10:15 a.m. (Signed by Judge Colleen McMahon on 3/29/07) (js) (Entered: 04/02/2007) |
| 03/30/2007 | | Set Deadlines/Hearings: Pretrial Conference set for 6/22/2007 10:15 AM before Judge Colleen McMahon. (js) (Entered: 04/02/2007) |
| 04/19/2007 | 7 | NOTICE OF APPEARANCE by Shane Howard Freedman on behalf of Doha Asian Games Organising Committee (Freedman, Shane) (Entered: 04/19/2007) |
| 04/25/2007 | 8 | STIPULATION that the time for DAGOC to answer the complaint is extended until 5/17/07. (Signed by Judge Colleen McMahon on 4/24/07) (cd) (Entered: 04/25/2007) |
| 04/25/2007 | | Set Answer Due Date purs. to 8 Stipulation and Order of Dismissal as to Doha Asian Games Organising Committee answer due on 5/17/2007. (cd) (Entered: 04/25/2007) |
| 05/15/2007 | 9 | STIPULATION EXTENDING TIME TO ANSWER, RESPOND OR OTHERWISE MOVE: Doha Asian Games Organising Committee answer due 5/31/2007. SO ORDERED. (Signed by Judge Colleen McMahon on 5/15/2007) |

| | | (jar) Modified on 5/16/2007 (Rivera, Jazmin). (Entered: 05/16/2007) |
|---|---|---|
| 05/18/2007 | 10 | NOTICE of Change of Address. Document filed by Ronda Ship Management Inc.. (Peterson, Nancy) (Entered: 05/18/2007) |
| 05/31/2007 | 11 | FIRST RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Doha Asian Games Organising Committee. (Freedman, Shane) (Entered: 05/31/2007) |
| 05/31/2007 | 12 | ANSWER to Complaint. Document filed by Doha Asian Games Organising Committee.(Freedman, Shane) (Entered: 05/31/2007) |
| 06/04/2007 | 13 | NOTICE OF CHANGE OF ADDRESS by Nancy Rebecca Peterson on behalf of Ronda Ship Management Inc.. New Address: Lennon, Murphy & Lennon, LLC, The Gray Bar Building, 420 Lexington Ave., Suite 300, New York, NY, USA 10170, (212) 490-6050. (Peterson, Nancy) (Entered: 06/04/2007) |
| 06/04/2007 | 14 | NOTICE OF CHANGE OF ADDRESS by Patrick F. Lennon on behalf of Ronda Ship Management Inc.. New Address: Lennon, Murphy & Lennon, LLC, The Gray Bar Building, 420 Lexington Ave., Suite 300, New York, NY, USA 10170, (212) 490-6050. (Lennon, Patrick) (Entered: 06/04/2007) |
| 06/20/2007 | 15 | ENDORSED LETTER addressed to Judge Colleen McMahon from Shane H. Freedman dated 6/19/07 re: DAGOC recently filed its Answer on 5/31/2007 and intends on filing a motion to vacate the attachment on ten days notice to plaintiff Ronda Ship Management, Inc. The parties jointly request that the 6/22/2007 status conference be adjourned. ENDORSEMENT: OK. (Signed by Judge Colleen McMahon on 6/20/07) (kco) (Entered: 06/21/2007) |
| 08/08/2007 | 16 | FILING ERROR - DEFICIENT DOCKET ENTRY - FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,. Document filed by Doha Asian Games Organising Committee. (Attachments: # 1 Memorandum of Law in Support of Motion to Vacate# 2 Declaration of Sultan M. Al-Abdulla# 3 Exhibit "A' to the Declaration of Sultan M. Al-Abdulla (Part 1)# 4 Exhibit "A" to the Declaration of Sultan M. A-Abdulla (Part 2)# 5 Exhibit "B" to the Declaration of Sultan M. Al-Abdulla (Part 1)# 6 Exhibit "B" to the Declaration of Sultan M. Al-Abdulla (Part 2)# 7 Declaration of Safwan Moubaydeen# 8 Declaration of Sotrios Kalamitsis# 9 Declaration of Mahmoud Abu Al-Dahab# 10 Text of Proposed Order)(Freedman, Shane) Modified on 8/9/2007 (KA). (Entered: 08/08/2007) |
| 08/09/2007 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Shane Howard Freedman to RE-FILE Document 16 FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,.FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,.FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,.FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,.. ERROR(S): Filing Error of Supporting Documents. Supporting Declaration and Memorandum of Law must be filed individually. Event codes located under Replies, Opposition and Supporting Docments. (KA) (Entered: 08/09/2007) |
| 08/09/2007 | 17 | FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and |

| | | |
|---|---|---|
| | | Garnishment,. Document filed by Doha Asian Games Organising Committee. (Attachments: # 1 Text of Proposed Order)(Freedman, Shane) (Entered: 08/09/2007) |
| 08/09/2007 | 18 | MEMORANDUM OF LAW in Support re: 17 FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,.. Document filed by Doha Asian Games Organising Committee. (Freedman, Shane) (Entered: 08/09/2007) |
| 08/09/2007 | 19 | DECLARATION of Sultan M. Al-Abdulla in Support re: 17 FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,.. Document filed by Doha Asian Games Organising Committee. (Attachments: # 1 Exhibit A1# 2 Exhibit A2# 3 Exhibit B1# 4 Exhibit B2)(Freedman, Shane) (Entered: 08/09/2007) |
| 08/09/2007 | 20 | DECLARATION of Safwan Moubaydeen in Support re: 17 FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,.. Document filed by Doha Asian Games Organising Committee. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Freedman, Shane) (Entered: 08/09/2007) |
| 08/09/2007 | 21 | DECLARATION of Mahmoud Abu Al-Dahab in Support re: 17 FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,.. Document filed by Doha Asian Games Organising Committee. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Freedman, Shane) (Entered: 08/09/2007) |
| 08/09/2007 | 22 | DECLARATION of Sotirios Kalamitsis in Support re: 17 FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,.. Document filed by Doha Asian Games Organising Committee. (Freedman, Shane) (Entered: 08/09/2007) |
| 08/15/2007 | 23 | ENDORSED LETTER addressed to Judge Colleen McMahon from Shane Freedman dated 8/7/07 re: Defendant will be filing a Motion to Vacate the Ex Parte Order re Maritime Attachment. ENDORSEMENT: The motion will be deemd submitted when the reply brief is filed. If I need oral argument, I will contact you. (Signed by Judge Colleen McMahon on 5/13/07) (cd) (Entered: 08/16/2007) |
| 08/23/2007 | 24 | MEMORANDUM OF LAW in Opposition *to Motion to Vacate*. Document filed by Ronda Ship Management Inc.. (Attachments: # 1 Exhibit A)(Peterson, Nancy) (Entered: 08/23/2007) |
| 08/23/2007 | 25 | AFFIDAVIT of Nancy R. Peterson in Support re: 24 Memorandum of Law in Opposition. Document filed by Ronda Ship Management Inc.. (Peterson, Nancy) (Entered: 08/23/2007) |
| 08/23/2007 | 26 | AFFIDAVIT of Anastasios Isidoros Pallis in Support re: 24 Memorandum of Law in Opposition. Document filed by Ronda Ship Management Inc.. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D (part 1)# 5 Exhibit D (part 2)# 6 Exhibit E)(Peterson, Nancy) (Entered: 08/23/2007) |
| 08/23/2007 | 27 | AFFIDAVIT of John Nicholas Pople in Support re: 24 Memorandum of Law in Opposition. Document filed by Ronda Ship Management Inc.. (Attachments: # 1 Exhibit A)(Peterson, Nancy) (Entered: 08/23/2007) |

| 08/30/2007 | 28 | REPLY AFFIRMATION of Shane H. Freedman in Support re: 17 FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,.. Document filed by Doha Asian Games Organising Committee. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Freedman, Shane) (Entered: 08/30/2007) |
| --- | --- | --- |
| 08/30/2007 | 29 | REPLY AFFIRMATION of Abdulla K. Al-Qahtani in Support re: 17 FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,.. Document filed by Doha Asian Games Organising Committee. (Attachments: # 1 Exhibit C to Reply Affirmation of Shane H. Freedman)(Freedman, Shane) (Entered: 08/30/2007) |
| 08/30/2007 | 30 | REPLY MEMORANDUM OF LAW in Support re: 17 FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,.. Document filed by Doha Asian Games Organising Committee. (Freedman, Shane) (Entered: 08/30/2007) |
| 09/17/2007 | 31 | REPLY AFFIRMATION of Sultan M. Al-Abdulla in Support re: 17 FIRST MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment,.. Document filed by Doha Asian Games Organising Committee. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C)(Freedman, Shane) (Entered: 09/17/2007) |
| 09/17/2007 | 32 | MOTION to Strike *Sur-Reply dated September 6, 2007*. Document filed by Doha Asian Games Organising Committee. (Attachments: # 1 Text of Proposed Order)(Freedman, Shane) (Entered: 09/17/2007) |
| 09/17/2007 | 33 | MEMORANDUM OF LAW in Support re: 32 MOTION to Strike *Sur-Reply dated September 6, 2007*.. Document filed by Doha Asian Games Organising Committee. (Freedman, Shane) (Entered: 09/17/2007) |
| 09/19/2007 | 34 | ENDORSED LETTER addressed to Judge Colleen McMahon from Nancy Peterson dated 9/17/07 re: counsel for plaintiff requests that a telephonic conference be scheduled. ENDORSEMENT: (1) No more briefing. (2) No phone conference needed. (Signed by Judge Colleen McMahon on 9/18/07) (dle) (Entered: 09/19/2007) |
| 09/21/2007 | 35 | DECISION AND ORDER denying 17 Motion to Vacate. For the foregoing reasons, defendant's motion to vacate the order of attachment is DENIED and its motion to reduce the amount of the attachment is GRANTED. The amount of attachment is hereby reduced to $13,577,488.32. (Signed by Judge Colleen McMahon on 9/20/07) Copies Faxed By Chambers.(kco) (Entered: 09/21/2007) |
| 09/24/2007 | 37 | AMENDED EX-PARTE ORDER FOR PROCESS OF MARITIME ATTACHMENT pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, the Clerk of Court shall issue Process of Maritime Attachment and Garnishment against all tangible or intangible property, credits, letters of credit, etc. or any other funds or property up to the amount of $13,577,488.32 belonging to, due or being transferred to, from or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name(s), or an amy be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of those banking/financial institutions named in the Process of Maritime Attachment, and/or other institutions or such other |

| | | garnishes to be named, or later identified, on whom a copy of the Process of Maritime Attachment and Garnishment may be served.. Supplemental process enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court. Pursuant to F.R.C.P. 5(b)(2)(D) each garnishee may consent, in writing, to accept service by any other means. So Ordered. (Signed by Judge Colleen McMahon on 9/24/07) (jco) (Entered: 10/01/2007) |
|---|---|---|
| 09/26/2007 | 36 | ORDER APPOINTING SPECIAL PROCESS SERVER PURSUANT TO F.R.C.P. RULE 4(c): It is hereby ORDERED that Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy Peterson or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC or any process server employed by Gotham Process Servers, be and hereby appointed, in addition to the United States Marshal, to serve the Process of Attachment and Garnishment and the Verified Complaint, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who may hold assets of, for or on account of, Defendant. (Signed by Judge Colleen McMahon on 9/26/07) (tro) (Entered: 09/26/2007) |
| 09/28/2007 | | MARITIME ATTACHMENT AND GARNISHMENT ISSUED as to Doha Asian Games Organising Committee on 9/28/07 in the amount of $13,577,488.32. (dle) (Entered: 10/01/2007) |
| 01/16/2008 | | MARITIME ATTACHMENT AND GARNISHMENT ISSUED as to Doha Asian Games Organising Committee on 9/25/07 in the amount of $13,577,488.32. (jw) (Entered: 01/16/2008) |
| 12/03/2008 | 38 | ENDORSED LETTER addressed to Judge Colleen McMahon from Nancy R. Siegel dated 12/3/08 re: Request for a 3 week adjournment of the scheduled 12/5/08 conference. ENDORSEMENT: 3 weeks is the day after Christmas, adjourn to 1/9/09 @ 10:30 a.m. (Status Conference set for 1/9/2009 at 10:30 AM before Judge Colleen McMahon.) (Signed by Judge Colleen McMahon on 12/3/08) (db) (Entered: 12/03/2008) |
| 01/09/2009 | | Minute Entry for proceedings held before Judge Colleen McMahon: Conference held on 1/9/2009. Decision: Parties met for conference. Court ordered defense counsel to provide client's address by Monday, 1/12/09, 5 p.m.East.(Submitted by Patrick Somers). (mde) (Entered: 01/09/2009) |
| 01/29/2009 | 39 | NOTICE OF SUBSTITUTION OF COUNSEL AND REQUEST FOR ELECTRONIC NOTIFICATION: Attorneys at Patton Boggs LLP hereby appear as counsel for Doha Asian Games Organising Committee in this action in place and instead of Shane Howard Freedman. (Signed by Judge Colleen McMahon on 1/29/09) (tro) (Entered: 01/29/2009) |
| 04/22/2009 | 40 | CONSENT ORDER CONCERNING ATTACHED FUNDS: ORDERED that, in accordance with Fed. R. Civ. P. 67. Supp. Fed. R. Civ. P. B(3)(a), and Loc. Civ. R. 67.1, the garnishees in this action. HSBC, CitiBank, N.A J.P. Morgan Chase, and BNP Paribas (collectively referred to hereinafter as the "Garnishees") are directed to deposit forthwith all attached funds in this matter (less applicable fees) into the Registry of the Court for the Southern District of New York. Payment by the Garnishees by way of check is to be made payable |

| | | |
|---|---|---|
| | | to the "Clerk, U.S. District Court, Southern District of New York" and with the docket number of this action ("07 Civ. 94 (CM)") on the face of the check. Alternatively, payment by the Garnishees by way of wire transfer is to be made to the Court's Registry for the account number set forth in this order. (Signed by Judge Colleen McMahon on 4/22/09) (js) (Entered: 04/22/2009) |
| 04/29/2009 | | CASHIERS OFFICE CRIS DEPOSIT dated 4/22/09, from Judge Judge Colleen McMahon, $4,722.92 from WIRE TRANSFER deposited on 4/23/09,4/24/09, Receipt Number 686225,686380 and placed into CRIS on 4/29/09. (dig) (Entered: 04/29/2009) |
| 05/06/2009 | | CASHIERS OFFICE CRIS DEPOSIT dated 4/23/09, from Judge Judge Colleen McMahon, $9,289,287.90 from WIRE TRANSFER deposited on 4/27/09 4/28/09, 5/4/09, Receipt Number 686685,687078 and placed into CRIS on 5/6/09. (dig) (Entered: 05/06/2009) |
| 08/27/2009 | 41 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Promoseven Holdings B.S.C.C..(Goodman, Robert) (Entered: 08/27/2009) |
| 08/27/2009 | 42 | MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment, 37 Order Issuing Maritime Attachment and Garnishment,,,,, Maritime Attachment and Garnishment Issued *notice of motion to vacate maritime attachment*. Document filed by Promoseven Holdings B.S.C.C..(Goodman, Robert) (Entered: 08/27/2009) |
| 08/27/2009 | 43 | DECLARATION of Akram R. Miknas in Support re: 42 MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment, 37 Order Issuing Maritime Attachment and Garnishment,,,,, Maritime Attachment and Garnishment Issued *notice of motion to vacate maritime attachment*. MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment, 37 Order Issuing Maritime Attachment and Garnishment,,,,, Maritime Attachment and Garnishment Issued *notice of motion to vacate maritime attachment*.. Document filed by Promoseven Holdings B.S.C.C.. (Attachments: # 1 Exhibit Exhibits A-E to declaration in support of motion to vacate maritime attachement, # 2 Exhibit Exhibits F-L to declaration in support of motion to vacate maritime attachment)(Goodman, Robert) (Entered: 08/27/2009) |
| 08/27/2009 | 44 | MEMORANDUM OF LAW in Support re: 42 MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment, 37 Order Issuing Maritime Attachment and Garnishment,,,,, Maritime Attachment and Garnishment Issued *notice of motion to vacate maritime attachment*. MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment, 37 Order Issuing Maritime Attachment and Garnishment,,,,, Maritime Attachment and Garnishment Issued *notice of motion to vacate maritime attachment*.. Document filed by Promoseven Holdings B.S.C.C.. (Goodman, Robert) (Entered: 08/27/2009) |
| 08/27/2009 | 45 | NOTICE OF CHANGE OF ADDRESS by Robert Steven Goodman on behalf of Promoseven Holdings B.S.C.C.. New Address: Mound Cotton Wollan & Greengrass, One Battery Park Plaza, New York, New York, USA 10004, 212-804-4200. (Goodman, Robert) (Entered: 08/27/2009) |
| 09/11/2009 | 46 | ENDORSED LETTER addressed to Judge Colleen McMahon from Nancy R. |

| | | |
|---|---|---|
| | | Siegel dated 9/10/09 re: Counsel for Plaintiff request that the briefing schedule for the pending motion to vacate attachment be modified as follows: Opposition papers due: 9/18/09; Reply papers due 10/2/09. ENDORSEMENT: granted. (Signed by Judge Colleen McMahon on 9/11/09) (tro) (Entered: 09/14/2009) |
| 09/17/2009 | 47 | ENDORSED LETTER addressed to Judge Colleen McMahon from Eric Westenberger dated 9/16/09 re: Counsel for Defendant write to request that the briefing schedule for the pending motion to vacate attachment be modified to as follows: all opposition papers to be due by 10/9/09; reply papers due by 10/23/09. ENDORSEMENT: granted. (Signed by Judge Colleen McMahon on 9/17/09) (tro) (Entered: 09/17/2009) |
| 10/09/2009 | 48 | MEMORANDUM OF LAW in Opposition re: 42 MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment, 37 Order Issuing Maritime Attachment and Garnishment,,,,, Maritime Attachment and Garnishment Issued *notice of motion to vacate maritime attachment*. MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment, 37 Order Issuing Maritime Attachment and Garnishment,,,,, Maritime Attachment and Garnishment Issued *notice of motion to vacate maritime attachment*.. Document filed by Doha Asian Games Organising Committee. (Westenberger, Eric) (Entered: 10/09/2009) |
| 10/09/2009 | 49 | MEMORANDUM OF LAW in Opposition re: 42 MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment, 37 Order Issuing Maritime Attachment and Garnishment,,,,, Maritime Attachment and Garnishment Issued *notice of motion to vacate maritime attachment*. MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment, 37 Order Issuing Maritime Attachment and Garnishment,,,,, Maritime Attachment and Garnishment Issued *notice of motion to vacate maritime attachment*.. Document filed by Ronda Ship Management Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Siegel, Nancy) (Entered: 10/09/2009) |
| 10/14/2009 | 50 | ENDORSED LETTER addressed to Judge Colleen McMahon from Eric Westenberger dated 10/8/2009 re: Counsel respectfully request that the following briefing schedule be "so ordered" by the Court: All opposition papers due: October 16, 2009. Reply papers due: October 30, 2009. ENDORSEMENT: OK. So Ordered. (Signed by Judge Colleen McMahon on 10/13/2009) (jfe) (Entered: 10/14/2009) |
| 10/19/2009 | 51 | ENDORSED LETTER addressed to Judge Colleen McMahon from Eric Westenberger dated 10/16/2009 re: Requesting that to the extent that DAGOC is able to locate the relevant documents before the Court rules on Promoseven's motion, that the Court consider it in deciding the matter. ENDORSEMENT: Is this a case in which the attachment will be vacated following the Second Circuit Opinion of earlier today? (Signed by Judge Colleen McMahon on 10/16/2009) (jpo) (Entered: 10/19/2009) |
| 10/23/2009 | 52 | REPLY AFFIDAVIT of Arthur M. Handler in Support re: 42 MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment, 37 Order Issuing Maritime Attachment and Garnishment,,,,, Maritime Attachment and Garnishment Issued *notice of motion to vacate maritime attachment*. MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment, 37 Order |

| | | |
|---|---|---|
| | | Issuing Maritime Attachment and Garnishment,,,,, Maritime Attachment and Garnishment Issued *notice of motion to vacate maritime attachment*.. Document filed by Promoseven Holdings B.S.C.C.. (Attachments: # 1 Exhibit Exhibits A-C to reply declaration of Arthur M. Handler)(Goodman, Robert) (Entered: 10/23/2009) |
| 10/23/2009 | 53 | REPLY MEMORANDUM OF LAW in Support re: 42 MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment, 37 Order Issuing Maritime Attachment and Garnishment,,,,, Maritime Attachment and Garnishment Issued *notice of motion to vacate maritime attachment*. MOTION to Vacate 3 Order Issuing Maritime Attachment and Garnishment, 37 Order Issuing Maritime Attachment and Garnishment,,,,, Maritime Attachment and Garnishment Issued *notice of motion to vacate maritime attachment*.. Document filed by Promoseven Holdings B.S.C.C.. (Goodman, Robert) (Entered: 10/23/2009) |
| 11/03/2009 | 54 | ORDER TO SHOW CAUSE: Plaintiff is HEREBY ORDERED TO SHOW CAUSE why this court's order(s) in the above captioned action directing the Clerk of the Court to issue process of maritime attachment and garnishment and appointing process server to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the F.R.C.P. should not be vacated. Plaintiff is FURTHER ORDERED TO SHOW CAUSE why any funds attached by electronic fund transfers pursuant to this Court's order(s) should not be immediately released. Plaintiff is FURTHER ORDERED TO SHOW CAUSE why this action should not be dismissed for lack of personal jurisdiction over the defendant. Plaintiff shall specify what basis exists for asserting personal jurisdiction over the defendant or in rem jurisdiction over identifiable assets of the defendant. Plaintiff is FURTHER ORDERED TO SHOW CAUSE why venue lies in this district if there is personal jurisdiction over the defendant. Plaintiff may submit an affidavit and brief totaling no more than ten pages no later than seven (7) days following receipt of this Order. Failure to file shall constitute an admission that the court lacks jurisdiction over the matter and it will be dismissed forthwith. If defendant(s) contest any of plaintiff's assertions it may submit an affidavit and brief totaling no more than ten pages, no later then seven (7) days following receipt of plaintiff's papers. The Court will not grant any request to enlarge the page restrictions or for an extension of the time to file papers. (Signed by Judge Colleen McMahon on 11/2/09) (tro) (Entered: 11/10/2009) |
| 11/20/2009 | 55 | MEMORANDUM OF LAW re: 54 Order to Show Cause,,,,,, *In response to Order to Show Cause*. Document filed by Ronda Ship Management Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Siegel, Nancy) (Entered: 11/20/2009) |
| 12/02/2009 | 56 | RESPONSE TO ORDER TO SHOW CAUSE re: 54 Order to Show Cause,,,,,,,. Document filed by Promoseven Holdings B.S.C.C.. (Goodman, Robert) (Entered: 12/02/2009) |
| 12/03/2009 | 57 | RESPONSE TO ORDER TO SHOW CAUSE re: 54 Order to Show Cause,,,,,,,. Document filed by Doha Asian Games Organising Committee. (Westenberger, Eric) (Entered: 12/03/2009) |

| 12/03/2009 | 58 | DECLARATION of Eric S. Westenberger re: 57 Response to Order to Show Cause. Document filed by Doha Asian Games Organising Committee. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L)(Westenberger, Eric) (Entered: 12/03/2009) |
|---|---|---|
| 12/03/2009 | 59 | DECLARATION of Richard Marsh re: 57 Response to Order to Show Cause. Document filed by Doha Asian Games Organising Committee. (Westenberger, Eric) (Entered: 12/03/2009) |
| 12/10/2009 | 60 | DECISION AND ORDER VACATING ATTACHMENT AND DISMISSING CASE; that the Court has carefully considered all of the arguments presented. To the extent not specifically addressed in this Opinion they are either moot or without merit. Accordingly, the attachment order is vacated. Plaintiff has not demonstrated any basis for asserting In personam jurisdiction over defendant. As the now-vacated EFT attachment is the only asserted basis of jurisdiction, the action must be dismissed. The Clerk of the Court is directed to terminate the motion and to close the case. (Signed by Judge Colleen McMahon on 12/4/09) (pl) (Entered: 12/10/2009) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/17/2009 11:46:22 | | |
| **PACER Login:** lm2533 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 1:07-cv-00094-CM |
| **Billable Pages:** 8 | **Cost:** | 0.64 |

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

Ronda Ship Management Inc.

     v.

Doha Asian Games Organising Committee

------------------------------------------------ X

DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/10/09

07 cv 94 (CM)

## DECISION AND ORDER VACATING ATTACHMENT
## AND DISMISSING CASE

McMahon, J.:

     On November 2, 2009, the Court issued an order to show cause directing plaintiff to show cause why the maritime attachment in this case should not be vacated in light of Shipping Corp. of India v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009), and the Complaint dismissed for lack of jurisdiction. Plaintiff argues *inter alia* that vacature and dismissal are not warranted because: (1) *Jaldhi* should not be applied retroactively; and (2) the funds in this case are no longer Electronic Fund Transfers ("EFTs") and, thus, not subject to *Jaldhi*. These arguments have no merit.

     First, the Court of Appeals for the Second Circuit recently decided that Jaldhi applies retroactively. Hawknet, Ltd. v. Overseas Shipping Agencies, No. 09 2128 Civ., 2009 WL 3790654, at *2 (2d Cir. Nov. 13, 2009). That disposes of plaintiff's first argument.

     Second, the fact that the bank restraining the funds may have transferred the funds into an interest bearing account in the Court Registry Investment System ("CRIS"), does not remove them from the scope of Jaldhi. Indeed, the EFTs in Jaldhi were also transferred into the CRIS. "No alchemy by the bank transformed EFTs that cannot be attached into property of the defendant that can be attached." See Argus Development Inc. v. Steelcore Trading Ltd., 2009 WL 4016626 (S.D.N.Y.), November 16, 2009)(JGK).

     The Court has carefully considered all of the arguments presented. To the extent not specifically addressed in this Opinion they are either moot or without merit. Accordingly, the attachment order is vacated.

     Plaintiff has not demonstrated any basis for asserting in personam jurisdiction over

defendant. As the now-vacated EFT attachment is the only asserted basis of jurisdiction, the action must be dismissed. The Clerk of the Court is directed to terminate the motion and to close the case.

SO ORDERED:

Colleen McMahon
U.S.D.J.

Dated: December 4, 2009
New York, New York